UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MASON JACOB EBERLY, | : | CIVIL NO. 1:20-CV-02443 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**I. Introduction.**

This is a social security action brought under 42 U.S.C. § 405(g). The plaintiff, Mason Jacob Eberly ("Eberly"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 12-1* to *12-12*.[2]  In September 2018, Eberly protectively filed[3] applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since September 28, 2018. *Admin. Tr.* at 157–58, 160–67.  After the Commissioner denied his claim at the initial level of administrative review, Eberly requested an administrative hearing. *Id.* at 98–99.  And on November 20, 2019, Eberly, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Richard Guida. *Id.* at 30–62.  During the hearing, Eberly "amended

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Eberly's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*  Here, Eberly's application for Disability Insurance Benefits is dated October 26, 2018, and his application for Supplemental Security Income Benefits is dated May 3, 2019. *See Admin. Tr.* at 157, 160.  But September 28, 2018, is the date identified by the ALJ as the date that Eberly protectively filed his applications. *See id.* at 15, 17, 25.

2

his alleged onset date to September 8, 2017[,]" and informed the court he was asserting an end date of his disability of December 16, 2018, thereby seeking "a closed period from September 8, 2017[,] to December 16, 2018" (hereinafter "the Closed Period"). *Id.* at 15.

The ALJ determined that Eberly had not been disabled from September 8, 2017 (the alleged onset date), through January 28, 2020 (the date of the decision). *Id.* at 25.  And so, he denied Eberly benefits. *Id.*  Eberly appealed the ALJ's decision to the Appeals Council, which denied his request for review on November 2, 2020. *Id.* at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On December 29, 2020, Eberly, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence. *Doc. 1* ¶ 14.  He requests that the court reverse and set aside the Commissioner's decision and "other such relief as it may deem justified[.]" *Id.* at 6–7 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). *Doc. 8*.  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 11, 12*.  The parties filed briefs, *see docs. 19, 20*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports these findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

4

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Eberly was disabled but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id.*

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id.* (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Eberly met the insured-status requirements through June 30, 2019. *Admin. Tr.* at 17.

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

The claimant bears the burden of proof at steps one through four of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting Cotter, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On January 28, 2020, the ALJ denied Eberly's claim for benefits. *Admin. Tr.* at 15–25. At step one of the sequential-evaluation process, the ALJ found that Eberly had not engaged in substantial gainful activity since September 8, 2017, his alleged onset date. *Id.* at 17–18.

At step two of the sequential-evaluation process, the ALJ found that Eberly had the following severe impairments: attention deficit-hyperactivity disorder

8

("ADHD"); autism; communication disorder; generalized anxiety disorder; and post-traumatic stress disorder ("PTSD"). *Id*. at 18.

At step three of the sequential-evaluation process, the ALJ found that Eberly did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 18–20.

The ALJ then determined that Eberly has the RFC to perform "a full range of work at all exertional levels" with some limitations. *Id.* at 20. The ALJ limited Eberly to only occasional interactions with supervisors, coworkers, and the public. *Id.* In making this RFC assessment, the ALJ reviewed Eberly's symptoms, and "the medical opinion(s) and prior administrative medical finding(s)[.]" *Id.* at 20 (lack of specificity in original).

At step four of the sequential-evaluation process, the ALJ found that Eberly is unable to perform his past relevant work as a store laborer and cart attendant. *Id.* at 24.

At step five of the sequential-evaluation process, considering Eberly's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as bakery racker, small products assembler, and garment bagger—that exist in significant numbers in the national economy that Eberly could perform. *Id.* at 24–25.

In sum, the ALJ concluded that Eberly was not disabled from September 8, 2017, through the date of her decision on January 28, 2020. *Id.* at 25.  Thus, he denied Eberly's claims for disability insurance benefits and supplemental security income. *Id.*

**V.  Discussion.**

Eberly presents three claims.  First, Eberly claims that, in assessing Eberly's RFC, the ALJ failed to properly consider all of Eberly's impairments which the ALJ identified as severe. *Doc. 19* at 1, 11.  For example, Eberly claims that, when determining Eberly's RFC, the ALJ failed to take into account that Eberly alleged disability only during a defined period. *Id.* at 15.  Second, Eberly claims that the ALJ failed to properly consider Eberly's non-severe impairments, both when assessing impairment severity and when assessing Eberly's RFC. *Id.* at 1, 17. Finally, Eberly claims that the ALJ failed to give "controlling weight" to a treating physician's opinion.  Because we conclude that remand is warranted based on Eberly's first claim, we do not reach Eberly's other claims.

The ALJ acknowledges that Eberly "sought a closed period from September 8, 2017[,] to December 16, 2018" only once, in the section titled "Jurisdiction and Procedural History." *Admin. Tr.* at 15.  After this initial acknowledgement, the ALJ does not acknowledge this again. *See Admin. Tr.* at 15–25.  Instead, the ALJ refers

to Eberly's disability status "from September 8, 2017, through the date of this decision." *Id.* at 16, 25.  When discussing his decision to find that Eberly did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ observed "[t]oward the end of the adjudicative timeframe, evidence showed the claimant was able to join the honor society, go on field trips with classmates, and applied for a tutoring job." *Admin. Tr.* at 19.  But the ALJ later opines that "evidence in July 2019[,] showed the claimant went on an honor society school trip recently to Maryland[.]" *Id.* at 22 (citing *id.* at 30).  And, according to the same medical records on which the ALJ relies, this occurred sometime between May 17, 2019, and July 9, 2019, well outside of the Closed Period. *Compare id.* at 508–14 *with id.* at 515–20.

And when analyzing Eberly's RFC, the ALJ appears to rely heavily on Eberly's abilities as demonstrated after the conclusion of the Closed Period.  For example, the ALJ wrote:

- "Mental status exam in January 2019 showed the claimant had an apprehensive mood, and expressed feelings of apprehension about making friends at school, but was otherwise within normal limits.  The following month, evidence showed Concerta improved his attention problems as well as his energy level.  Psychiatric exam showed he had normal mood and affect, normal speech and behavior, and normal cognition and memory.  May 2019 progress notes showed the claimant finished the school year well and even applied to a tutoring job at his school.  Mental status exam was unremarkable but for apprehensive mood.  Indicative of significant

11

- functional improvement, especially with regard to his social skills, evidence in July 2019 showed the claimant went on an honor society school trip recently to Maryland and had 'a great time.' Furthermore, evidence showed he was getting all A grades in nursing school, which showed his ability to understand, remember, concentrate, persist, and adapt to stressful situations such as test-taking had significantly improved since the alleged onset date." *Id.* at 21–22.
- "Next, with regard to the claimant's symptomatology and treatment regimen, the undersigned finds that when considered along with the preponderance of evidence, the claimant's symptomatology and treatment regimen support his allegations to a degree, but are not consistent with his allegations of debilitating impairments. Evidence clearly showed that over the course of the adjudicative timeframe, medications and counseling improved the claimant's ability to concentrate, socialize, and cope with stress such that he was able to participate in school trips to different states and earn excellent grades in his nursing program." *Id.* at 22.
- "Also, [mild limitations in concentration] is supported by the fact that the claimant began college in August of 2018, got all As the first semester, and has maintained an A average to the present. The claimant attended classes on campus and not online. The claimant has been a Biology tutor at his college, and he is the vice president of an honor society." *Id.* at 23.
- "Also, [Eberly's treating psychologist's opinion] is not supported by the fact that the claimant began college in August of 2018, got all As the first semester, and has maintained an A average to the present. The claimant attended classes on campus and not online. The claimant has been a Biology tutor at his college, and he is the vice president of an honor society." *Id.*

Eberly claims that "[t]he ALJ fail[ed] to recognize that [he] was only seeking benefits for a closed period of time, and that during this period of time (which was in excess of one year) [he] was unable to work." *Doc. 19* at 9 (citing *Admin Tr.* 20–23). Eberly asserts that "[t]he ALJ focuses on notes of treatment showing temporary improvement, rather than considering Claimant's records of treatment over time, to determine Claimant's employability, particularly for the

period of time where Claimant is seeking benefits for a closed period." *Doc. 19* at 10.  Furthermore, Eberly argues in a footnote, he "does not assert that his condition never improved over time, which is why he is only seeking benefits for a closed period of time." *Doc. 19* at 9 n.1 (citing *Admin. Tr.* 40, 51–53).

The Commissioner, however, fails to respond to these arguments in her brief. *See doc. 20*.  In fact, the Commissioner states the issue before the court as "[w]hether substantial evidence supports the Commissioner's decision that plaintiff was not disabled within the meaning of the Act for the relevant period from September 8, 2017, his alleged onset date of disability, through January 28, 2020, the date of the ALJ's decision." *Doc. 20* at 4.  And the single instance where the Commissioner acknowledges the Closed Period is as follows:

> Plaintiff also seeks benefits for a closed period from September 8, 2017, his amended onset date of disability, to December 16, 2018, during which time he alleges he was unable to work (Pl.'s Br. at 6-7, 9).  Within this context, Plaintiff argues that the ALJ should have included in the RFC such additional limitations as unskilled work to account for poor concentration and focus, unscheduled breaks, an inability to remain on task, absenteeism, and an inability to respond to changes in a routine work setting (Pl.'s Br. at 13).
> The evidence, however, does not support a finding of such limitations where, as the ALJ explained, Plaintiff reported that Concerta significantly improved his ability to focus and concentrate, which his mental status examinations supported; he was able to pay attention and persist in school well enough to earn straight A's; his coping skills improved with therapy and, in fact, he thrived in stressful situations such as college courses (Tr. 19); counseling records showed that he was highly

> intelligent, artistic, caring, and responded very well to treatment (Tr. 21); he finished the 2019 school year well; and he applied for a tutoring job (Tr. 19-22). To the extent that Plaintiff relies on his hearing testimony to support a finding of additional limitations in the RFC, the ALJ considered his allegations in accordance with the regulations at 20 C.F.R. §§ 404.1529, 416.929 and found that his statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence of record, which the ALJ thoroughly discussed in his decision (Tr. 20-22).

*Doc. 20* at 19–20. Thus, even where the Commissioner acknowledges the Closed Period, she relies on evidence of actions Eberly took outside of the Closed Period. *Id.* at 20 ("he finished the 2019 school year well; and he applied for a tutoring job").

We acknowledge that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). And the RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the

ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

When crafting an RFC, the ALJ must "survey[ ] the medical evidence[.]" *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 505 (3d Cir. 2009). "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017). And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D.

Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Moreover, in setting the RFC, the ALJ must clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05). Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 365 F.3d 501, 505 (3d Cir. 2004). The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

More specifically, "[i]n a closed-period case, the ALJ 'determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of [the ALJ's] decision.'" *Newbold v. Colvin*, 718 F.3d 1257, 1260 n.1 (10th Cir. 2013) (citing *Shepherd v. Apfel*, 184 F.3d 1196,

16

1199 n.2 (10th Cir. 1999)). "To be eligible for [Closed Period of Disability] benefits, a claimant must show that they were temporarily disabled, but later experienced a medical improvement that allowed them to work again." *Cooperman v. Social Security Adm'n*, 2022-1915, 2023 WL 3477288, at *1 (Fed. Cir. 2023). "Typically, both the disability decision and the cessation decision are rendered in the same document." *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987). Thus, "[t]he claimant in the 'closed period' case would receive a lump-sum check for the period of disability, but would not be found entitled to current monthly benefits." *Id.* When considering a closed period case, evidence of the claimant's condition after the closed period is relevant but not dispositive of eligibility for disability. *Lee v. Comm'r of Soc. Sec.*, 248 Fed. Appx. 458 (3d Cir. 2007). Furthermore, where "a significant portion" of the record cited by the ALJ "is outside the relevant closed disability period[,]" "there is insufficient evidence to sustain the ALJ's decision." *Townsend v. Secretary U.S. Dept. of Health and Human Services*, 553 Fed. Appx. 166, 167–68 (3d Cir. 2014).

Here, the record reflects that the ALJ depended heavily on evidence of Eberly's abilities after the Closed Period to determine Eberly's RFC between September 8, 2017, and January 28, 2020. *Admin. Tr.* at 25. And, in fact, the ALJ states Eberly's RFC in the present tense, despite Eberly's assertion that his condition had improved such that he sought benefits only for the Closed Period. *Id.*

17

Although the period the ALJ analyzed encompasses the Closed Period, the ALJ's reliance on Eberly's abilities outside of the Closed Period demonstrates a failure to set forth "a clear and satisfactory explication of the basis on which" his conclusion rests. *See Cotter*, 642 F.2d at 704.  It is entirely unclear to us whether the ALJ considered the evidence of Eberly's condition after the Closed Period to be permissibly relevant or impermissibly dispositive.  In sum, based on the present record, we cannot conclude that the ALJ's decision is supported by substantial evidence.

Furthermore, "[a]gency regulations require that a finding of medical improvement be based upon more than a claimant's own assertion that their condition has improved." *Id.*  "Instead, a finding of medical improvement 'must be based on the changes in the symptoms, signs, and/or laboratory findings associated with [the] impairment(s).'" *Id.* (quoting 20 C.F.R. § 404.1594(b)(1)) (alterations in original).  The ALJ also failed to conduct this necessary analysis.

## VI. Remand.

Because the ALJ's decision is not supported by substantial evidence on the present record, the question then is whether the court should award benefits to Eberly, as he requests in his complaint, or remand the case to the Commissioner for further proceedings. *See doc. 1* at 6 (Wherefore Clause) (requesting that the

court reverse the Commissioner's decision and aware Eberly benefits). We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, where there has been an excessive delay in the litigation of the claim which is not attributable to the

19

claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id.*

Here, although Eberly filed his complaint on December 29, 2020, the plaintiff filed three motions for an extension of time, which we granted, and filed his brief on January 1, 2022. *Docs. 13–19*. Furthermore, we cannot say that substantial evidence on the record as a whole shows that Eberly was disabled for the Closed Period and entitled to benefits. Thus, we will remand the case to the Commissioner for further proceedings.

## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge